## Fotterall *v.* Armour, Appellant.

*Landlord and tenant—Notice by a tenant as to vacation of premises—Sufficiency of notice.*

There are no particular words or form prescribed for a notice from a tenant to a landlord as to the vacation of the demised premises. The notice must, however, state clearly, positively and unequivocally the intention of the tenant to vacate or surrender the premises at a fixed time. It must be certain and definite as to the premises, the intention to vacate and the time when the surrender or vacation of the premises is to take place. It must be positive, decisive and without ambiguity.

Where a city notifies a tenant of its intention to take a part of the leased premises, and it appears that the taking of the strip by the city did not render the balance valueless for the purposes of the tenant, a mere statement by the tenant to the landlord that it will be necessary for him to vacate the premises, with a request to accept rental to a date mentioned, and with a suggestion that a further amicable arrangement for the future should be made by the parties, but without any statement as to a certain date when the premises would be vacated, is not a sufficient notice to the landlord upon which the latter can safely act.

Argued March 28, 1907. Appeal, No. 393, Jan. T., 1906, by defendant, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1903, No. 1,382, on verdict for plaintiff in case of Stephen B. Fotterall *v.* Jonathan O. Armour. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Assumpsit for rent. Before BREGY, J.

In addition to the facts stated in the opinion of the Supreme Court it appeared at the trial that the letters of July 14 and August 10, 1898, were in full as follows:

"July 14th, 1898.
"7 & 9 MANHATTAN MARKET, N. Y.
"Mr. S. B. Fotterall,
       "No. 622 North 19th St., Phila., Pa.
"Dear Sir:—
" On my return to New York I found your letter of July 7th returning check for $666.66.
" As you are undoubtedly aware, the City of Philadelphia

will evict us from these premises on the first day of August next, and in consequence of their taking part of the premises at that time, it will be necessary for us to vacate them, and after that date we will, together, have a claim against the City of Philadelphia for this rent. In any event we can probably arrange this satisfactorily and amicably at the time of appearing before the City's jury to assess damages, and we will be pleased to have you accept this check as payment of rent, up to and including the first day of August, and then I have no doubt we can make an amicable arrangement for the future.

       " Very respectfully yours,

            " P. B. ADAMS."

       " 7 & 9 MANHATTAN MARKET, N. Y.

            " Aug. 10, 1898.

"Mr. S. B. Fotterall,

    " 2001 Chestnut St., Phila., Pa.

" Dear Sir :—

    " We enclose you herewith our checks for $999.99 and also a postage stamp for two cents, being for rent in full for premises at No. 40 South Delaware Avenue, Phila., Pa. for the months of April, May, June, July, August and Sept. and would be pleased to have you send us proper receipt therefor. We have delayed sending you check for August and September thinking that it would be agreeable for you to make the claim against the city for the rent, in our place. However, we enclose you rent up to the first of October, and as we will be compelled to vacate the premises within a very short time, under the city's notice to quit, we will try to make some further arrangement with you at the time of meeting of the city's jury to assess the damages.

            " Yours respectfully,

" (Enclosures.)           " P. B. ADAMS."

Verdict and judgment for plaintiff for $3,581.25. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Dimner Beeber,* with him *J. Levering Jones,* for appellant. —The notice was sufficient : Ahearn v. Bellman, Law Rep.

4 Exch. Div. 201; Doe v. Jackson, 1 Douglas, 175; Bury v. Thompson, Law Rep. 1 Queen's Bench Div. [1895] 696.

*Ruby R. Vale*, with him *Edward W. Magill*, for appellee.—The several letters are insufficient because neither contains a clear, positive and unconditional expression of an intention to quit or deliver up possession: Smucker v. Grinberg, 27 Pa. Superior Ct. 531; Byrne v. Funk, 13 W. N. C. 503; Dellone v. Gerber, 3 York Leg. Rec. 23; O'Neill v. Cahill, 2 Brewster, 357; Candler v. Mitchell, 119 Mich. 464 (78 N. W. Repr. 551); Doe v. Jackson, 1 Douglas, 175; Ayres v. Draper, 11 Mo. 548; Gardner v. Ingram, 61 Law Times (N. S.), 729.

The notice is insufficient because it does not designate any time whatever when the demised premises will be delivered up: Currier v. Barker, 68 Mass. 224; Snyder v. Carfrey, 54 Pa. 90; Jalass v. Young, 3 Pa. Superior Ct. 422; Phœnixville Boro. v. Walters, 29 W. N. C. 483.

OPINION BY MR. JUSTICE MESTREZAT, May 6, 1907:

By a lease dated September, 1885, Stephen B. Fotterall, the plaintiff, leased to Jonathan O. Armour, the defendant, "all that property known as No. 400 S. Delaware Ave. and No. 401 Penn St. for the term of five years to commence and be computed from the first day of January, 1886." The two properties are on the south side of and adjacent to Pine street, the first fronting eighteen feet on Delaware avenue and the other fronting twenty feet on Penn street, and the buildings are separated by a brick wall in the rear. The annual rental was $2,000, payable quarterly. The lease provides that if the lessee shall hold over after the expiration of the term it shall be deemed and taken to be a renewal of the lease "for the term of another year and so on from year to year, until either party shall give three (3) months' previous written notice to the other of an intention to determine the tenancy at the end of any year."

The lessee entered into possession of the premises, cut a passageway through the wall between the properties, and used them together as one property in the meat business of Armour & Company. He held over after the expiration of

the five year term.   On May 10, 1898, the city of Philadelphia gave to the tenant a notice that "the city of Philadelphia, at the expiration of three months from the date of this notice, will require for public use that portion of the property occupied by you as tenant, lying within the bed of Delaware Avenue as established between Vine and South Streets." This would take from the east front of 400 Delaware avenue a strip of the width of one foot ten inches at the south and four feet four and one-quarter inches at the north side.   About the same time the landlord received a similar notice from the city.   On July 2, 1898, the New York attorney of the tenant sent to the landlord a check for the rent of the property up to August 1, 1898.   The landlord refused to accept the check and returned it.   On July 14, the attorney again wrote the landlord, acknowledging the return of the check, and said: "As you are undoubtedly aware, the city of Philadelphia will evict us from these premises on the first day of August next, and in consequence of their taking part of the premises at that time, it will be necessary for us to vacate them, and after that date we will, together, have a claim against the city of Philadelphia for this rent.   In any event we can probably arrange this satisfactorily and amicably at the time of appearing before the city's jury to assess damages, and we will be pleased to have you accept this check as payment of rent, up to and including the first day of August, and then I have no doubt we can make an amicable arrangement for the future."   In reply, the landlord wrote the attorney that Armour's claim was against the city of Philadelphia, and requested a check for the rent due April 1 and July 1.   The attorney wrote the landlord again under date of August 10, 1898, inclosing a check for the rent due for the months of April, May, June, July, August and September, and added: "We have delayed sending you a check for August and September thinking that it would be agreeable for you to make the claim against the city for the rent, in our place.   However, we enclose you rent up to the first of October, and as we will be compelled to vacate the premises within a very short time, under the city's notice to quit, we will try to make some further arrangement with you at the time of meeting of the city's jury to assess the damages."

The tenant vacated the premises in the latter part of September, 1898, but the landlord had no notice of this fact until some time after January 1, 1899. This action was brought to recover the rent due for the last quarter of 1898 and for the year 1899, aggregating the sum of $2,500. On the trial of the cause, the tenant claimed that the letters of July 14 and August 10, 1898, constituted a sufficient written notice of an intention to terminate the tenancy under the terms of the lease and that, therefore, he was not liable for the rent. The court denied this position, held that the notice was not sufficient under the terms of the lease, and the jury under proper instructions found that there was no such eviction as to warrant the tenant in leaving the premises before the end of the year, because the part taken did not render valueless what was left. In other words, according to the finding of the jury, the taking of the small part of the premises did not destroy their use for the purposes for which the tenant had rented and used them. A verdict for the whole amount of the landlord's claim was rendered by the jury, and judgment having been entered thereon, the tenant has taken this appeal.

There are three assignments of error, but as the second and third have no exceptions to support them, they cannot be considered. The first assignment alleges error by the court in holding that the tenant, the defendant, did not give sufficient notice of his intention to vacate the premises more than three months prior to the end of the current term or year. The only question, therefore, for consideration here is, as stated by the learned counsel for the defendant, whether or not the defendant's letters to plaintiff, dated respectively July 14, and August 10, 1898, constituted a sufficient written notice under the terms of the lease of his intention to terminate the tenancy at the end of the year 1898, so as to relieve the defendant of the rent for the year 1899. What is a sufficient notice between landlord and tenant as to vacating the demised premises is stated in the several text-books on the Law of Landlord and Tenant, and there does not seem to be any material difference as to what the notice should contain. There are no particular words or form prescribed for such notice. It must, however, state clearly, positively and unequivocally the intention of the landlord to repossess the premises, or of the tenant to vacate

or surrender the premises at a fixed time. The notice must be certain and definite as to the premises, the intention to vacate, and the time when the surrender or vacation of the premises is to take place. It must be positive, decisive, and without ambiguity. In brief, the language of the notice must be such as to convey to the landlord the intention of the tenant positively and unequivocally to vacate the premises at the time specified in the notice. Such substantially are the essential elements of a sufficient notice from a tenant to a landlord of his intention to surrender the demised premises. The opinions in the English case of Gardner v. Ingram, 61 Law Times (N. S.), 729, discuss the essentials of a sufficient notice of an intention to quit the premises given by a tenant to his landlord. The notice in that case was held insufficient, Lord COLE-RIDGE, C. J., and BOWEN, J., delivering opinions. In the opinion of the latter it is said: " I think it is very necessary that in a notice to quit there should be plainness of speech; that is, it must be plain and unequivocal in its terms, leaving no doubt as to the intention of the party giving it. The effect of such a notice is to put an end to the relation of landlord and tenant, therefore the landlord has a right to know whether the tenant is really going or not. If instead of adopting that course the tenant uses language which is ambiguous, makes use of expressions which leave matters at the conclusion of the term contingent on something to be done or some arrangement to be made, there is no sufficient notice to quit. We are asked to place a business construction upon this notice ; in my opinion there was no business intended by it. The tenant used language on which the landlord could not safely act."

Turning now to the letters of July 14 and August 10, which contain the notice given, it will be observed that they do not express a certain and fixed intention of the defendant to determine the tenancy at the end of the year or at any other time. It must be conceded that the letter of July 2, read in connection with the letters in question, shows that the latter referred to the demised premises. The two letters of July 2 and 7, immediately preceding the letters in question, had reference solely to the payment of the rental. The letter of July 14, as will be observed, acknowledges the return of the check for the rent due up to August 1. It then contains what the defendant

claims to be a notice of an intention to determine the tenancy. It says that it will be necessary for the defendant to vacate the premises by reason of the intention of the city to take a part of them, "and after that date we will, together, have a claim against the city of Philadelphia for this rent." This is not a notice that the defendant intends to quit the premises, but a reason why it might become necessary for him to vacate them at some time not designated. The notice of the city was to the effect that a part of the premises would be taken and it did not necessarily follow that the premises could not still be used by the defendant for the business for which he rented it. In fact, as will be observed, the jury found that the taking of the small part of the premises by the city did not render the balance valueless for his purposes. The mere statement by the defendant, therefore, that it would be necessary for him to vacate the premises, was not a positive notice that he would surrender the tenancy at a fixed date on which the landlord could rely or would be justified in reletting them to another. The main idea apparent, however, on the face of the notice, is that the communication was more particularly concerned with the rent and not as a notice by the defendant of his intention to quit the premises. This is made more apparent by the next clause of the letter which says: "In any event, we can probably arrange this satisfactorily and amicably at the time of appearing before the city's jury to assess damages, and we will be pleased to have you accept this check as payment of rent, up to and including the first day of August, and then I have no doubt we can make an amicable arrangement for the future." The thought of the writer throughout the communication, therefore, was to arrange then for the payment of the rent, and to leave to the parties to "make an amicable arrangement for the future," as to the occupation of the premises by the tenant. While the defendant had a right to rely upon the notice given by the city that it would take part of the premises in three months, yet he may have thought, from information in his possession, that the taking would be deferred, and the time when the city would actually appropriate might be delayed; and, hence, he would not exercise his right at that time to positively determine the tenancy. The language used by him in the letter clearly carries out this thought. It is not

a positive notice that upon a certain date or at the end of the then present term the tenancy would be determined.

It is also claimed that the letter of August 10 conveys a like notice of an intention to determine the tenancy or, possibly, that taken in connection with the letter of July 14, discloses such an intention. Again, it will be observed that that letter is concerned primarily with the question of rent. It is true that it says it remits the rent, "and as we will be compelled to vacate the premises within a very short time, under the city's notice to quit, we will try to make some further arrangement with you at the time of meeting of the city's jury to assess the damages." This, however, does not strengthen that part of the former letter which, it is contended, contains a notice of an intention to quit the premises. It shows, on the other hand, that the time when the defendant will vacate the premises is uncertain, and that further arrangements between the parties would be made at a subsequent date. From this letter, it will be observed, that the time of vacating the premises by the defendant is left in entire uncertainty, and that both communications anticipate a future arrangement between the parties which we must construe to be in regard to the surrender of the premises and, possibly, in regard to the rentals of the premises. At all events, it is clear that the two communications, taken separately or together, contain no express and unequivocal determination to surrender the premises at the end of the then existing tenancy or any other definite date. As suggested above, it did not necessarily follow that the defendant would be compelled to leave the premises because the city intended to take a very small portion of them. The purpose of the taking was to widen Delaware avenue, and, hence, the premises would remain abutting on the same, although a wider, street. The taking might occasion a temporary inconvenience, but the premises could easily be restored so as to make the property equally desirable for the purposes for which it was rented.

In this contest between the landlord and the tenant, it is well to note that the intended act of the city would not take the whole of the premises which would necessarily have compelled the defendant to vacate. The letters should be read in the light of this fact. If such had been the notice of the city,

they might, although with not much reason, have warranted a different interpretation.   Here, however, the city gave a notice that it intended to take such portion of the premises as would not materially affect their use by the defendant and, therefore, the action of the city did not necessarily mean the vacation or surrender of the premises by the defendant.

It will be noticed that the letters were written by the attorney of the defendant.   It must, therefore, be assumed that he understood the character of the notice required to determine the tenancy as well as the import of the language which he used in the letters he addressed to the plaintiff.   If it was his purpose to give notice of the defendant's intention to quit, he well knew that that notice must be clear, certain and unequivocal as to such intention and as to the date of the determination of the tenancy.   He knew that nothing less would satisfy the terms of the lease and end the tenancy.   With this knowledge he wrote the letters in question.   They are neither certain, definite, nor unequivocal as to the intention to quit the demised premises or as to the date on which the tenancy would be determined.   It cannot, therefore, be presumed that the defendant's attorney intended that the letters should be a notice of the determination of the tenancy ; on the contrary, it is rather to be assumed that he left that matter with the question of rentals and the damages to be secured from the city for future arrangements between the parties.

We cannot concern ourselves, as suggested by defendant's counsel, with what view his attorney took of any decisions he may have read prior to writing the letters of July 14 and August 10 to the plaintiff.   We must construe and rely upon the letters themselves, and not upon an intention of the writer undisclosed in the letters.   The rights of the parties depend upon their written contract.   Either party could determine the tenancy by a three months' previous written notice.   Each had a right to rely upon that provision of the agreement and to act towards the premises with the assumption that it would be observed.   The importance of the notice to the landlord is obvious.   Until he received a notice, he had the right to assume that the defendant would continue to be his tenant.   He could not relet the property until he was notified of the time when the tenant would vacate it.   If he received three months' no-

tice as required by the lease he then · had an opportunity as well as sufficient time to relet them before the end of the existing tenancy. Had he, however, let these premises after the correspondence between him and the defendant's attorney he would have done so on the uncertainty of their being vacated by the defendant. The latter, thinking the premises still sufficient for his business, might have changed his mind and continued to occupy the property, and had he done so the landlord would have been liable to any other party to whom he had rented the premises. It was, therefore, of the utmost importance to the landlord if the tenant did intend to vacate the premises, that he give a positive and unequivocal notice of such intention and of the date when the tenancy would end.

Our conclusion is that the letters of July 14 and August 10, 1898, did not contain a positive and unequivocal notice of an intention to terminate the defendant's tenancy of the premises at any fixed date, and hence the notice was insufficient under the terms of the lease.

The judgment is affirmed.