**EFCO IMPORTERS**

v.

**Ab Ramlosa HALSOBRUNN.**

**Civ. A. No. 80–1728.**

United States District Court,
E. D. Pennsylvania.

Oct. 22, 1980.

LeRoy E. Perper, James J. Donohue, Brent S. Gorey, White & Williams, Philadelphia, Pa., for plaintiff.

Theodore R. Mann, Barry E. Ungar, Philadelphia, Pa., Larry H. Spector, New York City, Mann & Ungar, Philadelphia, Pa., Demov, Morris, Levin & Shein, New York City, for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

### I. INTRODUCTION

This is a contract action to recover damages for alleged violations of a distribution agreement. Pursuant to Fed.R.Civ.P. 12(b)(6), defendant has moved to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons which follow, defendant's motion is granted.

### II. FACTS

On April 10, 1970, defendant named plaintiff as his exclusive sales agent for the United States to sell and distribute Ramlosa Mineral Water. Complaint, ¶ 7. This agreement was to run for five years. *Id.* at ¶ 8. The contract had an automatic renewal clause; unless notice of intent not to renew was given one year or more before

the end of the five year period the contract was automatically renewed for another five year period. On March 18, 1974, defendant wrote plaintiff and stated that it intended to cancel the agreement on the date of the expiration, April 10, 1975. *Id.* at ¶ 9. This letter, of course, was written more than one year before the date of expiration.

During the final year of the contract, the parties negotiated regarding a new agreement. In September 1974, defendant delivered a draft of a new agreement to plaintiff. *Id.* at ¶ 10. The draft proposed that plaintiff would be exclusive sales agent for the sale and distribution of Ramlosa Mineral Water solely in Pennsylvania. However, this was not agreeable to plaintiff because it desired to be the exclusive sales agent for the entire United States, and not just Pennsylvania. During the ensuing months the parties continued to discuss a new agreement, exchanging proposals and counterproposals. *Id.* at ¶¶ 11–14. Apparently negotiations came to a halt in May, 1975, for it was at that time that plaintiff expressly rejected defendant's proposed agreement. *Id.* at ¶ 15.

In February, 1978, defendant once again offered plaintiff the exclusive sales agency for Ramlosa Mineral Water in Pennsylvania. *Id.* at ¶ 16. This precipitated an exchange of letters, *id.* at ¶¶ 17–22, none of which, however, directly dealt with the new proposal. Thus in March, 1978, plaintiff reminded defendant that both parties had been operating since 1975 under the terms of the original 1970 agreement. *Id.* at ¶ 17. Defendant responded apparently by offering yet another draft proposal. In June and October of 1978, defendant informed plaintiff that it had been directly shipping its product to other distributors throughout the United States. *Id.* at ¶ 19.

Such information should not have caught plaintiff off guard, for it is consistent with the September, 1974 draft agreement in which defendant informed plaintiff that after expiration of the initial five year period he could be the exclusive sales agent for Pennsylvania only. Indeed all proposals offered an exclusive agency for Pennsylvania

alone. *Id.* at ¶¶ 13–16. Finally, in December, 1978, defendant informed plaintiff that the Pennsylvania market could no longer be reserved for it in light of the fact that plaintiff had never accepted the exclusive sales agency for Pennsylvania which defendant had continually offered. *Id.* at ¶ 21. Negotiations remained alive, however, for defendant did propose a special two year commission policy. *Id.* Plaintiff did not respond. Finally, in April, 1979, defendant wrote plaintiff informing it that an agreement had been reached with the Joseph Schlitz Brewing Company for the exclusive distribution of Ramlosa Mineral Water throughout the United States. Defendant told plaintiff that it could buy Ramlosa Mineral Water from Schlitz. *Id.* at ¶ 22.

Plaintiff asserts three counts in its complaint. First, it alleges a breach of contract. It argues that the agreement of April 10, 1970 continued to govern the rights and obligations of the parties; therefore defendant's sale of products to other distributors, in June and September, 1978, constituted a breach of this agreement. Second, under equitable principles, plaintiff alleges that even if the contract did terminate in 1975, it is entitled to restitution and reimbursement for expenses incurred in connection with its distribution of defendant's product. Third, plaintiff alleges tortious interference with contractual relations.

## III. DISCUSSION

### A. Breach of Contract Count

Plaintiff's breach of contract count assumes that defendant did not effectively terminate the original April 10, 1970 agreement. Rather, plaintiff argues, this original agreement "continues to govern the rights and obligations of the parties," *id.* at ¶ 26, despite defendant's clear written notice of his intention to terminate.

Notice of intent to terminate a contract "must be clear and unambiguous, and where the conduct of one having the right to terminate is ambiguous, he will be

deemed not to have terminated the contract." *Maloney v. Madrid Motor Corp.*, 385 Pa. 224, 228, 122 A.2d 694, 696 (1956): Plaintiff argues that defendant's termination notice was rendered ineffective because the parties continued to act in accordance with the terms of the exclusive distribution agreement after the date of intended cancellation. Thus, plaintiff contends, the original five year contract was automatically renewed for an additional five year term.

The *Maloney* case is controlling. Indeed the facts in the present case are less favorable to a finding of "ambiguous" conduct.

*Maloney* was an action in assumpsit by a former employee against his employer to recover commissions allegedly due under an employment contract. The contract was to run for five years, but it would be automatically renewed for one year periods until either party gave ninety days written notice of intention to terminate. Four months before the expiration of the original five year term, defendant–employer wrote plaintiff–employee:

"In accordance with the agreement which we made several years ago, we do not wish to continue this agreement, in the future, when it expires next September. As you probably know, we have done considerably better under our arrangements with you than we agreed in the agreement and, of course, would like the privilege of doing that again. However, I do think that we should try to arrive at your compensation a little differently than provided for in this agreement, and I think you will agree with us in that respect. This is merely a notice as called for under the agreement, but we do not wish to renew it."

*Id.* at 226, 122 A.2d at 695. Some weeks after plaintiff received this notice, defendant orally stated that, " ' "[w]e will continue on just the same." ' " *Id.* Plaintiff therefore continued in defendant's employ. For two years the parties periodically discussed a different method of compensation. But they never reached a final agreement. In the meantime, however, plaintiff received

his same salary and, for four months, he also received commissions as provided in the contract. When defendant stopped paying these commissions, plaintiff brought suit, alleging that the notice of termination was insufficient or, alternatively, that the subsequent conduct of the parties nullified the notice. The Pennsylvania Supreme Court disagreed and held that defendant's termination notice was clear. Moreover, stated the court, "[t]here [was] no evidence from which a nullification or a retraction of the notice could be inferred." *Id.* at 229, 122 A.2d at 696. Therefore, although the parties continued on the same basis, "[s]ince the offer to continue 'under the same basis' did not specify a definite time or prescribe conditions which would determine the duration of the relation, the contract is presumed to be terminable by either party at will." *Id.*

■ In the present case, plaintiff admits that the March 18, 1974 letter of termination was clear. Complaint, ¶ 9. The letter did qualify this termination notice, for it explained that "the agreement needed rewriting on several points." *Id.* This perhaps suggested that the old contract simply needed some retouching. But this is not significant: the termination letter in *Maloney* likewise noted that things should be done "a little differently."

In *Maloney*, after the original contract's term ran out, the parties *acted* as if it still controlled. This lasted for approximately four months. In the instant case, the parties also *acted* as if the contract still controlled. This lasted for approximately three years. It is immaterial that this is a longer time period, for in the instant case defendant continually stated–and insisted– that the original agreement needed modification; this occurred both before the original contract ran out, *see* Complaint, ¶¶ 10 & 11, and afterwards, *see id.* at ¶¶ 14, 16 & 22. Thus any reliance on plaintiff's part caused by this longer passage of time is irrelevant, for defendant's dissatisfaction with the original contract had been repeatedly communicated.

*Maloney*, then, demonstrates that post–termination behavior identical with pre–termination behavior is an insufficient basis to support an automatic renewal of a contract–assuming communication of a clear notice to terminate. *Maloney* goes further, however, for plaintiff had been orally assured that, notwithstanding the written termination notice, things would "continue on just the same." Despite such an unambiguous expression of intent to continue under the contract, the court relied on the formal termination notice. By contrast, in the present case, plaintiff did not receive such "conflicting signals." Rather, defendant consistently manifested expressions of dissatisfaction–both before and after the notice of termination. It is therefore quite clear that *Maloney* precludes any finding of contract renewal.

Plaintiff argues, however, that *Maloney* is distinguishable because the court carefully noted that "[t]here is no evidence from which a nullification or a retraction of the notice [of termination] could be inferred." 385 Pa. at 229, 122 A.2d at 696. Yet the only such evidence plaintiff can point to is that the parties continued to perform under the terms of the agreement dated April 10, 1970, even after the date of expiration specified in the notice. This fact also characterized *Maloney* ; therefore it cannot serve to distinguish the case.

The other cases relied upon by plaintiff are inapposite. *Berwick Hotel Co. v. Vaughn*, 300 Pa. 389, 150 A. 613 (1930), held that the defendant's notice of termination was insufficient. However, there was conflicting testimony as to whether the statements of withdrawal were even uttered: "[defendant's] statements were distinctly denied by the witnesses to whom they claimed they were made and whose testimony the jury accepted as reliable." *Id.* at 396, 150 A. at 616. Moreover, the statements themselves were equivocal; they were vague manifestations of dissatisfaction which did not definitely inform the hearer that defendant wanted to terminate his contract. Therefore the court understandably held that "it is not clear whether [defendant] . . . rescinded it or not." *Id.* at 397, 150 A. at 616.

In *Wright v. Bristol Patent Leather Co.*, 257 Pa. 552, 101 A. 844 (1917), the parties provided that certain specified acts should be done as a condition to the right to rescind. Defendant failed to adhere to one of these conditions and the court therefore held that its termination notice was inadequate: " 'the party cannot rescind in any other mode [prescribed in the contract] nor without complying with the conditions.' " *Id.* at 557, 101 A. at 845, *quoting* 2 Black, Rescission of Contracts § 574 (1916).

In *Fotterall v. Armour*, 218 Pa. 73, 66 A. 1001 (1907), the court held that a lessee failed to give adequate notice of vacation of the premises when he failed to include in his termination notice the time when the surrender of the premises was to take place. Without a fixed date specified in the notice the landlord was left in "entire uncertainty," *id.* at 80, 66 A. at 1004, and he therefore could not rely on the notice and relet the premises to another tenant. Indeed, from the information available, the landlord was not even certain that the tenant would ever have to vacate, *see id.* at 79, 66 A. at 1004.

Plaintiff mainly relies on *Holmes Electric Protective Co. v. Goldstein*, 147 Pa.Super.Ct 506, 24 A.2d 161 (1943). In light of the more recent Supreme Court *Maloney* case, the *Holmes* Superior Court case is not dispositive. But in any event, it is distinguishable.

In *Holmes*, defendant entered into a contract with plaintiff for a burglar alarm service. The contract was for a one year term, but it would continue on from year to year in the absence of thirty days written notice to terminate before the end of any term. Thirty–one days before the end of the first one year term, defendant notified the plaintiff in writing that he wished to discontinue service at the end of the term. In his written notice, however, defendant further stated that " '[w]e wish to continue this service on a month to month basis without a thirty day notification.' " *Id.* at 509, 24 A.2d at 163. After the end of the

contract term, defendant continued to accept the burglar alarm service. The court held that defendant's letter of notification constituted an offer to modify the contract. Since the plaintiff did not accept the offer, the contract was renewed for another one year term. The court did note that defendant's acceptance of service after the original term had ended was inconsistent with defendant's claim that he had terminated the contract. However, the court emphasized that it based its holding on *the deficiency of the written notice, see id.* at 511, 24 A.2d at 164, for the additional language was at odds with an intention to rescind the contract. "By its ambiguity, it may be construed to have been an inquiry regarding a change in the term of the contract...." *Id.* at 511–12, 24 A.2d at 164. As I have already noted, *supra,* the instant notice of termination was not ambiguous or faulty in any respect. Indeed plaintiff has made no argument to the contrary.

In support of count I, plaintiff also argues that "where parties continue to perform under a contract even though the contract has expired by its terms, the contract is deemed renewed and the parties will be bound by its terms." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim at 4. This argument is baseless in light of the *Maloney* facts which run directly counter to plaintiff's "rule." *See* discussion *supra.* Moreover, the cases that plaintiff cites in support thereof are, again, readily distinguishable from the facts before me.

In *Good Intent Co. v. Hartzell,* 22 Pa. 277 (1853), plaintiff and defendant stagecoach companies had signed a contract in which defendants had made themselves jointly liable for road tolls. When the contract expired, defendants continued to use the road for three years. For the first two years, they paid according to the now expired agreement; however, in the third year, they ceased to pay. The Pennsylvania Supreme Court held that "when the parties continued to act under the contract [after expiration], their tacit agreement to be bound by it [was] as strong as any express

renewal could make it." *Id.* at 288. *Good Intent* is strikingly different from the present case, however, for the stage companies gave no notice of their intent to terminate the toll contract. Moreover, there was no evidence adduced at trial demonstrating that they considered the contract to be modified in any way. Indeed, *Buckley v. Garrett,* 47 Pa. 204 (1864), also cited by plaintiff, states the *Good Intent* rule to be that "[a] continuance to act under the terms of an expired contract *without objection,* concludes the party." *Id.* at 213 (emphasis added). In the present case, by contrast, I have already recounted defendant's numerous communications to plaintiff which proposed changing the terms of the initial contract.

Therefore, I hold that *Maloney* is controlling and I further hold that plaintiff has not alleged any set of facts which would permit plaintiff to demonstrate a nullification or retraction of defendant's March 18, 1974 notice of termination. For the foregoing reasons I will grant defendant's motion to dismiss count I.

### B. Plaintiff's Restitution Count

In support of count II of the complaint, plaintiff argues that even if I determine that the agreement dated April 10, 1970 expired on April 10, 1975, defendant should remain obligated, under the equitable principles of unjust enrichment, to make restitution for the valuable benefits which plaintiff conferred upon defendant by its promotion and development of a market for Ramlosa Mineral Water. To recover under the doctrine of unjust enrichment, plaintiff must prove two elements: first, an enrichment to another; second, *a resulting injustice* if recovery for the enrichment is denied. *Meehan v. Cheltenham Township,* 410 Pa. 446, 189 A.2d 593 (1963); *Commonwealth Department of Public Welfare v. Adams County,* 30 Pa.Commw.Ct 164, 373 A.2d 143 (1977). *See Sachs v. Continental Oil Co.,* 454 F.Supp. 614 (E.D.Pa.1978); *United States Gypsum Co. v. Schiavo Bros., Inc.,* 450 F.Supp. 1291 (E.D.Pa.1978). "The mere fact that a person benefits another is

not of itself sufficient to require the other to make restitution therefor." Restatement, Restitution § 1, Comment (c) (1937).

For purposes of this Rule 12(b)(6) motion, I must liberally construe the complaint in plaintiff's favor. I therefore assume that plaintiff's promotional work did, in fact, benefit, and thereby "enrich," defendant. *See* Complaint, ¶ 13. Nevertheless, plaintiff has not pleaded sufficient facts which make out successfully the second element of this test. I will therefore grant defendant's motion to dismiss count II.

 Initially, I must point out that plaintiff has misconceived the effect of the actions of the parties after April 10, 1975. Because plaintiff and defendant continued to deal with one another as they had in the past, the original agreement did not expire on this date. Rather it continued in effect—but it was terminable at the will of either party. The contract did not terminate until defendant began acting inconsistently with the exclusive distribution terms. Until this time, however, the terms of the April 10, 1970 agreement defined the rights and obligations of the parties. For instance, if plaintiff had alleged defendant's failure to pay the appropriate $.20 per case compensation, *see* Complaint, Exhibit A at 1, for plaintiff's sales activities from April 10, 1975 to April 3, 1979, plaintiff would have pleaded a valid cause of action. But plaintiff does not seek compensation according to his enumerated contract rights. Instead, he seeks recovery for expenditures which, according to the specific language of the contract, are costs to be borne exclusively by the plaintiff. *See* Complaint, Exhibit A at 2 ("Except as hereinafter stated, Agent shall pay all of the costs of conducting the agency hereunder ... but excluding expenses which Principal and Agent hereinafter agree shall be charged back to Principal." There is no later mention that Principal is responsible for development or promotional costs.) Because the contract remained in effect after April 10, 1975, albeit terminable at will, plaintiff must be compensated according to its agreed upon terms. He cannot, *in addition*, seek other elements of compensation.

Therefore, denying recovery for defendant's enrichment would not result in injustice. On the contrary, it would further the original intentions of the two contracting parties as expressed in their written contract of April 10, 1970. Were I to hold otherwise, defendant would be compelled to pay for services performed under circumstances which did not put him on notice that plaintiff expected to be paid. This is directly counter to Pennsylvania law. *Sachs v. Continental Oil Co.*, 454 F.Supp. at 619; *Colish v. Goldstein*, 196 Pa.Super.Ct. 188, 192–93, 173 A.2d 749, 751 (1961). " '[C]hagrin, disappointment, vexation, or supposed ingratitude cannot be used as a subsequent basis for a claim for compensation where none was originally intended or expected.' " *Bloomgarden v. Coyer*, 479 F.2d 201, 212 (D.C.Cir.1973), *quoting Bellanca Corp. v. Bellanca*, 3 Storey 378, 380, 53 Del. 378, 380, 169 A.2d 620, 623 (1961).

By dismissing plaintiff's restitution claim, I am holding the parties to the terms of their original agreement. This accords with the principle that "the quasi–contractual doctrine of unjust enrichment [is] inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 290, 250 A.2d 443, 448 (1969) (citing cases). Resort to the equitable doctrine of unjust enrichment is therefore precluded because defendant has not been unjustly enriched: a legal contract controlled the relationship of the parties for the period, April 10, 1975 to April 3, 1979; and this contract did not provide reimbursement for the costs plaintiff incurred in marketing defendant's product.

## C. *Tortious Interference with Contractual Relations Count*

 In count III of his complaint, plaintiff alleges that defendant tortiously interfered with the contacts and relationships that plaintiff developed while it was defendant's exclusive selling agent. Apparently, plaintiff refers to defendant's sales to, and consequent appropriation of, plain-

tiff's customers—a course of action that began in June, 1978. *See* Complaint, ¶¶ 32, 34 & 35. Pennsylvania courts recognize that intentional and unprivileged interference with contractual relations of third parties with a plaintiff constitutes a cause of action in tort. *See, e. g., Sachs v. Continental Oil Co.,* 454 F.Supp. at 618; *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466 (1979); *Adler, Barish, Daniels, Levin & Creskoff v. Epstein,* 482 Pa. 416, 393 A.2d 1175 (1975) (adopting Restatement (Second) of Torts § 766); *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974); *Glenn v. Point Park College,* 441 Pa. 474, 272 A.2d 895 (1971). The elements of this tort are: "the [defendant] must act (1) for the purpose of causing the specific type of harm to the plaintiff, (2) such act must be unprivileged, and (3) the harm must actually result." *Glenn v. Point Park College, id.* at 479, 272 A.2d at 898–99, *quoting Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 301, 167 A.2d 472, 474 (1960). *See Sachs v. Continental Oil Co., supra* ; Restatement (Second) Torts § 766.

■ Plaintiff argues that defendant's alleged contractual interference was unprivileged because "defendant has been able to market Ramlosa Mineral Water only by reason of the customers and clients which the plaintiff (at considerable expense and with great diligence) has established and developed in its promotion of Ramlosa Mineral Water throughout the United States." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim at 13. Defendant's refusal to continue the exclusive sales agency contract may in fact prevent plaintiff from recouping his marketing expenditures. But defendant's effective termination notification, and his subsequent refusal to grant an exclusive agency contract, *see supra,* should have put plaintiff on notice that plaintiff's exclusive business relationship with defendant would soon end. Surely it is not improper for defendant to further *its* commercial interests so long as its actions do not breach its contractual obligations with plaintiff. Having held that plaintiff is precluded from contract recovery, *see su-*

*pra,* it would be anomalous to allow tort recovery for the very same alleged improper behavior of defendant. "To permit a promissee to sue his promissor in tort for breaches of contract *inter se* would erode the usual rules of contractual recovery and inject confusion into our well–settled forms of actions. Most courts have been cautious about permitting tort recovery for contractual breaches and we are in full accord with this policy." *Glazer v. Chandler,* 414 Pa. 304, 308, 200 A.2d 416, 418 (1964).

Plaintiff has therefore failed to demonstrate that defendant's acts were unprivileged. In light of this holding, it is unnecessary to discuss the other two elements of the tortious interference with contract test. I will therefore grant defendant's motion to dismiss count III of plaintiff's complaint.