## Garrett *versus* Dillsburg and Mechanicsburg Railroad Co.

1. The charter of a railroad company cannot be attacked collaterally for bad faith in obtaining it.

2. The Act of April 4th 1868, authorizes the formation of railroad corporations, by persons subscribing articles of association which are to be filed with the secretary of the Commonwealth, &c., and become the charter of the company, but not until $9000 per mile have been subscribed and ten per cent. paid in good faith; no subscription to be taken without the payment of ten per cent. Garrett subscribed the articles for such corporation, but did not pay the ten per cent.; the articles were filed and the certificate of charter issued. In a suit against Garrett for his subscription after issuing the certificate: *Held*, that he was liable although he had not paid the ten per cent.

3. Until the requisite number of subscriptions and $9000 per mile have been obtained, the project is experimental and the association binds no one.

4. Until the association is ready to file the articles of association, a subscriber may withdraw.

5. If a subscriber suffers his name to remain and the articles to be filed, his obligation is final, and he cannot set up his omission against his associates.

May 10th 1875. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Cumberland county*: Of May Term 1874, No. 62. (Re-argument.)

This was an action of assumpsit, brought to the April Term 1872, of the court below, by the Dillsburg and Mechanicsburg Railroad Company against Andrew Garrett. The action was to recover the amount of subscription by the defendant to the capital stock of the plaintiffs. The case of Bucher against the same company, 26 P. F. Smith 306, was a suit on a subscription to the same stock, under somewhat different circumstances.

The plaintiffs were incorporated under the Railroad Law of April 4th 1868, Pamph. L. 62, 2 Br. Purd. 1211.

The first section authorized any number of citizens, not less than nine, to form a railroad company, and for that purpose, to sign articles of association, stating the name of the company, &c., the amount of capital, which should not be less than $10,000 per mile, the names of officials, &c. The articles of association, after being acknowledged, &c., as provided by the act, to be filed in the office of the secretary of the Commonwealth and recorded, &c., shall be the charter of the company. The articles of association not to be filed with the secretary of the Commonwealth until $9000 per mile be subscribed, and ten per cent. paid in cash to the directors; if the whole stock be not subscribed when the articles are filed, &c., the directors may keep the books open until all be subscribed, &c., and every subscriber shall pay ten per cent. of his subscription, in money, in good faith, when he subscribes, "and no subscription shall be received or taken without such payment."

28 P. F. SMITH—30

[Garrett *v.* Dillsburg, &c., Railroad Co.]

The declaration in the first count was that the defendant associated himself with others by written articles, for the purpose of constructing, &c., a railroad, under the name of the Dillsburg and Mechanicsburg Railroad Company, the capital stock to be $350,000, in shares of $50 each; the defendant subscribed for five shares, for which he agreed to pay $250, &c., setting out the articles of association, which prescribed that the name of the association should be the Dillsburg and Mechanicsburg Railroad Company; that the length of the road, as then contemplated, was about seven miles from Mechanicsburg, in Cumberland county, to Dillsburg, in York county; the capital to be $350,000, in shares of $50 each; the names of officers, &c., and the subscription of the defendant to the articles for five shares of the stock, September 2d 1871.

The declaration contained the common counts also.

The plea was, "Non assumpsit."

The case was tried January 22d 1874, before Junkin, P. J.

Plaintiff gave in evidence the articles of association, recorded in the office of the secretary of the Commonwealth, November 1st 1871, with the subscription of defendant appended for five shares; minutes of the association, directing the calls for payment of the whole of the subscription in various instalments, the last being payable May 1st 1871.

The plaintiff rested.

The defendant then made the following offers: 1. That the company did not proceed to build a road from Mechanicsburg, but from Silver Spring township, a mile distant; that defendant's subscription was made at a public meeting, at which time, the speakers there stated, that if he put down his name it would not bind him, unless he paid ten per cent. of the subscription money. The offer was objected to, because a change of terminus would be an infringement of corporate duty, to be taken advantage of exclusively by the Commonwealth.

2 and 3 (substantially the same). That when the articles were offered at a public meeting of the people of Mechanicsburg before the organization Judge Watts, the president of the association, stated that it was contemplated to build the road from Mechanicsburg to Dillsburg; citizens were asked to subscribe, and were told that the meeting was preliminary merely, and the subscribers would not be bound by their subscriptions until they were called on and actually paid ten per cent. of their subscriptions; that they could withdraw their subscriptions before they had paid the ten per cent.; that the meeting was called merely to see what could be done; and that defendant subscribed on these representations, believing them to be true.

4. That when the charter was about to be applied for, the association not having the requisite number of shares to secure it,

[Garrett v. Dillsburg, &c., Railroad Co.]

Judge Watts, the president, subscribed for 193 shares, anticipating that the Cumberland Valley Railroad Company, who were interested in the project, would take it, and that as president of the company, he directed the treasurer to pay the full amount of the subscription to enable them to secure the charter; that this was done and the charter was thus secured; this being the mode in which the $9000 per mile was paid.

All the offers were objected to as irrelevant, were rejected and bills of exception sealed.

The defendant's point and answer were :—

Point: If Andrew Garrett, the defendant, at the time he subscribed, did not know what he was subscribing; and was told by the parties who were subscribing at the same time, that his subscription was not binding until the ten per cent. was paid by him; his subscription is not binding and the plaintiff cannot recover.

Answer: " These instructions are refused. Defendant was bound to know what he was subscribing. All that was said about the defendant's subscription not being binding, is of no avail."

The court charged : " The defendant is liable under this evidence and you will find for the plaintiff."

The verdict was for the plaintiff for $559.94.

The defendant took a writ of error and assigned for error :—

The rulings of the court on the questions of evidence, the answer to his point and the charge of the court.

*W. H. Miller* (with whom was *H. Newsham*), for plaintiff in error.—A terminus of the road having been changed the subscription was not binding: Commonwealth v. Pittsburg, 5 Wright 282. The subscription having been made under misrepresentation could not be enforced: Custar v. Titusville, G. & W. & Co., 13 P. F. Smith 385; Crossman v. Penrose Ferry Co., 2 Casey 69; Hackney v. Allegheny Co. Mut. Ins. Co., 4 Barr 185 ; Coil v. Pittsburg F. College, 4 Wright 445; Pittsburg & S. Railroad v. Biggar, 10 Casey 457; Campbell v. McClenachan, 6 S. & R. 171; Miller v. Henderson, 10 Id. 290 ; Stubbs v. King, 14 Id 207 ; Renshaw v. Gans, 7 Barr 117; Ayer's Appeal, 4 Casey 179. The subscription was invalid without the payment of ten per cent. ; Hibernia Turnpike Road v. Henderson, 8 S. & R. 219; Erie & Waterford P. R. v. Brown, 1 Casey 156.

*J. Hayes*, for defendants in error.

Chief Justice AGNEW delivered the opinion of the court, May 24th 1875.

It is clear that the charter of the railroad company cannot be attacked collaterally for bad faith in obtaining it; Cochran v. Arnold, 8 P. F. Smith 399. The only question, therefore, is whether the subscription of the defendant is illegal and void, because of the non-payment of any part in cash at the time of

making it. The law does not expressly require payment of ten per cent. or any other sum when making an original subscription before application for the charter. Whether non-payment of ten per cent. by each subscriber, before application for the charter, is not an act of bad faith to the state, is a different question, and not before us now. It may be said, however, on this point, it is an omission attended with risk. But whether a subscriber who suffers his name to remain on the articles until organization, can defeat his subscription by non-payment of the ten per cent., is the matter before us. It would be unreasonable to hold that payment must be made at the time of subscription. Until the requisite number of subscriptions, and the sum of $9000 per mile are obtained, the project is experimental and inchoate, and the association has no binding obligation on any one, for until these conditions are complied with no charter can be had, and no authority is vested in the directors named in the articles to act. During the experiment it would be unreasonable to require any one to pay in his money; and to whom, during this period of uncertainty, could the first subscriber pay? The important period in the transaction is, when the association is ready to file their articles in the office of the secretary of the Commonwealth. Until this time the whole scheme is inchoate, and the subscriber may withdraw. But when he suffers his name to remain, and the articles to be filed, and organization of the corporation to become complete, he is in a different position. His subscription is there fully set out, and his obligation final. Surely he cannot then be permitted to set up his own omission of duty against his associates. He had his *locus pœnitentiœ* and suffered it to pass from him. In the absence of an express provision of law requiring the original subscribers to pay ten per cent. in the manner required of the subscribers after the organization, it seems to us an original subscriber ought not to be permitted to escape from his contract which he suffered to ripen into a finality, by permitting his name to remain until organization became complete, on its faith.

For these same reasons it is obvious, that the testimony as to the part Mr. Watts took, and what he said at the meeting to obtain subscribers, was not competent. It was true, as he then stated, that no subscriber would be bound; his subscription then was only experimental; the scheme was inchoate. But when the subscriber suffered it to remain, and to become a part of the articles of association filed, and an organization founded upon it, the case was widely different. Then he could not set aside his subscription. The fact that it was not binding when Mr. Watts spoke did not prevent it from ripening into a perfect obligation when the articles were duly filed as required by law.

Upon the whole case we discover no reason for reversing the judgment.                    Judgment affirmed.