Berwick Hotel Co. *v.* Vaughn, Appellant.

Argued April 14, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*E. J. Mullen,* with him *R. O. Brockway,* for appellant. —Defendant contended in the court below, and now contends, that there is such a material variance between purpose stated in stock subscription which he signed on December 19, 1923, and the purposes stated in the application for the charter for Berwick Hotel Co. executed March 5, 1924, as relieves him from liability on the stock subscription, he not having authorized or consented to said change and never having recognized the contract after the date of the preparation and filing of such articles of association: Auburn B. & N. Works v. Shultz, 143 Pa. 256; Plank Road Co. v. Arndt, 31 Pa. 317; Gray v. Navigation Co., 2 W. & S. 156; Cross v. Ry., 90 Pa. 392.

There was fraud in procuring the subscription: Howard v. Turner, 155 Pa. 349; Acetylene, etc., Co. v. Smith, 10 Pa. Superior Ct. 61; Crossman v. Bridge Co.,

26 Pa. 69; Max Meadows Land & Imp. Co. v. Mendinhall, 4 Pa. Superior Ct. 398.

*Charles B. Waller,* with him *A. W. Duy,* for appellee.—Merely amplifying the corporate powers will not release a subscriber: Cross v. Ry., 90 Pa. 392; Gray v. Navigation Co., 2 W. & S. 156.

An alteration in a charter of incorporation, by which additional privileges are given to it, is not such an invasion of the contract of subscription as will relieve the subscriber to the stock from his liability to pay.

In respect to fraud, it was appellant's duty immediately, on learning of the alleged fraudulent misrepresentations, to rescind his subscription: Kinter v. Trust Co., 274 Pa. 436; Wood v. Wood, 263 Pa. 521.

OPINION BY MR. JUSTICE FRAZER, May 12, 1930:

The Berwick Hotel Company, a corporation of this Commonwealth, sued in assumpsit to recover from defendant the sum of $5,370, with interest, alleged to be due and owing plaintiff as the unpaid balance on a subscription for sixty shares of the capital stock of plaintiff company, to be paid in ten installments, the first on January 1, 1924, and the last on July 1, 1924. The record discloses that a number of citizens of the Borough of Berwick, Columbia County, instituted in 1923, and successfully carried through, a campaign for capital stock subscriptions in a corporation to be organized to erect and operate a hotel in Berwick; to this end, an executive committee was formed to superintend the campaign and secure subscriptions. Through the solicitation of a member of this provisional committee, defendant signed, on December 19, 1923, the subscription here in suit. On February 12, 1924, he paid by check $630, covering the first installment, subsequently refusing to make further payments. Suit was brought after the last installment became due and remained unpaid; defendant first filed a demurrer to plaintiff's claim, which after

hearing the court below overruled and directed that an affidavit of defense be filed to the merits. The jury returned a verdict for plaintiff in the amount sued for, with interest. Motions for a new trial and judgment n. o. v. were dismissed and judgment entered on the verdict. Defendant appealed.

In his affidavit of defense, defendant avers that "both the name and purpose of the corporation for which he subscribed were materially changed after said subscription was signed, without knowledge or consent of deponent," and "that immediately upon learning that he had been deceived by false representations and change in name and purpose," he "refused to pay for said subscription or to be bound by said contract, and that, prior to the fifth day of March, 1924, the date of the execution of the charter application, the defendant notified W. S. Johnson, who secured his subscription for stock, that his subscription was withdrawn."

The trial judge in his charge carefully instructed the jury that if defendant clearly and positively gave notice to one or more of his fellow subscribers, before the date of filing the application for a charter, that he withdrew his subscription, he could not be held liable for the unpaid balance; this instruction was quite as favorable to defendant as he had a right to expect.

The admitted facts and circumstances in the case and those established by the evidence, clearly center the determination of this action in the controlling question presented to the jury: Did defendant legally withdraw his subscription and sever in good faith his connection with the proposed company before it came into legal corporate existence?

Appellant subscribed for sixty shares at the solicitation of Johnson, chairman of the provisional executive committee; and now contends his signature to the subscription agreement was obtained by false and fraudulent statements contained in the company's prospectus. There is nothing in this paper, offered in evidence and

included in the record before us, to support this claim in the slightest. It makes no promises and is devoid of extravagant statements. It sets forth, in some detail, the probable total investment and "estimated operating expenses," concluding with an estimated surplus of probable earnings over expenses. It contains no guarantee of profit and says nothing as to the purposes of the proposed organization, or as to the location of the proposed hotel. At the time appellant signed the subscription agreement he gave the prospectus careful attention. He testified: "Well, the Hockenberry prospectus paper was shown me and we went over that; Mr. Johnson, I believe, tried to show me where it was a very paying proposition." Manifestly, defendant cannot complain about this matter. He examined the paper; Johnson, a prominent business man of the borough, was no stranger to him; he could have made further inquiries, had he so desired, as to the correctness of the estimates. We find no evidence that he signed the subscription upon any particular inducement; as the record discloses, the hotel, since its construction, has not been operated at a loss; the representations of Johnson were not misleading. To authorize the rescission of a subscription to stock, as having been induced by misrepresentations, it must be alleged and proved that there was a false statement of facts made with fraudulent intent, which was relied on (Bartol v. Walden & Whann Co., 92 Fed. 13) ; and, as a general rule, a statement to constitute a false and fraudulent representation must be a representation of fact, and not a mere expression of opinion, belief, or prediction: 2 Fletcher's Cyc. of Corporations, page 1359.

As already stated, defendant made but one payment on his stock, which was not paid until overdue a month and twelve days. In the meantime, he entered more intimately into the promotion of the enterprise. Before making the above mentioned payment, he became a member of the provisional executive committee, at-

tended various meetings, and participated personally in the work of promoting the proposed corporation. An examination of the record fails to sustain defendant's contention that false and fraudulent statements were made for the purpose of inducing him to become a stockholder.

Defendant further alleges in his affidavit of defense as a reason for his refusal to pay for the stock for which he subscribed, that the original name of the intended company, "Hotel Berwick, Inc.," which appeared on the subscription blank he signed, was changed to "Berwick Hotel Company," without his knowledge or consent. We need make no further comment on this allegation than to say that the title of the company was in fact so changed at a meeting of the executive committee, held nearly two months before the filing of the charter application, as the minutes of the committee, admitted in evidence, show, the record being, "The name of Berwick Hotel Company was adopted"; and also that, as again proved by the minutes, appellant himself was in attendance at this meeting, as a member of the committee, and made no objection to the change.

Another allegation by which defendant seeks to justify his rescission of the stock agreement, is that the purpose of the corporation, as set forth in the application for a charter, instead of confining its operation to the Borough of Berwick, was so enlarged as to permit the company to engage in business elsewhere than in that borough, and he was thus deceived, because the purpose was, as he testified, "to erect a hotel in Berwick, according to my understanding." We find nothing in the record to support the charge of deception. The record is destitute of evidence, oral or written, sufficient to prove appellant was induced to subscribe on the belief that the enterprise was to be a purely local one. It does not appear that he discussed with any one the scope of the proposed corporation, and neither the subscription blank nor the prospectus makes reference to such

matter, nor does there appear to have been issued, during the campaign for subscriptions, even a tentative statement of the purposes of the company. The recital in the charter application of the purpose of the corporation was immaterial as there was no preëxisting formulation of the objects of the company to be changed. There could be no variance, material or otherwise, from a statement of purpose, which, so far as the record of the case shows, was not at the time in existence. We may consequently assume that the scope of the powers of the corporation were to be settled by the executive committee, or other authorized body of subscribers, and, if the matter was one that did not call forth protesting attention on the part of appellant, this was his affair.

He alleges however that, upon learning the name of the company had been changed, which in fact was done with his consent, and the powers of the corporation enlarged, but which he seems to have made no move to oppose, he gave notice of the withdrawal of his subscription. Did he give such notice properly and when? While it is not in the portion of the evidence appearing in the record before us, we learn from the charge of the trial judge that appellant testified he expressed dissatisfaction to several of his fellow subscribers. To one he said he would not go along, that he was going to withdraw and did withdraw his subscription; to two others, that he was not satisfied, that he was through with the enterprise; to another, that he was through with the whole proposition and would have nothing more to do with it. These persons to whom he claimed the declarations were made, well-known citizens of Berwick, one, the chairman of the executive committee, another its secretary, testified explicitly that defendant had at no time made declarations of the character testified to by him. Here was a conflict of testimony upon the controlling question in the case, a question wholly of fact, and one clearly for the jury to determine, which was correctly submitted to them by the court below. Un-

questionably, the testimony of appellant as to notice was neither clear nor unequivocal, and his statements were distinctly denied by the witnesses to whom he claimed they were made and whose testimony the jury accepted as reliable. If the results of the labors of his cosubscribers failed to meet with his approval and he desired to withdraw his subscription and separate himself from the intended corporation, he certainly could do so by proper notice to that effect, provided he gave such notice previous to filing the application for charter. "The important period in the transaction is, when the association is ready to file their articles in the office of the secretary of the Commonwealth. Until that time the whole scheme is inchoate, and the subscriber may withdraw": Garrett v. Dillsburg, etc., R. R. Co., 78 Pa. 465, 468. The notice however must be definite and adequate and given to proper persons or organized body: Muncy Traction Engine Co. v. Green, 143 Pa. 269. Mere general statements of an intention to do something are no more than assertions. Exclamatory expressions of dissatisfaction, declarations that he "was through with it," such as defendant here used to voice his discontent with the enterprise, are far from being adequate and positive. Certainly a court cannot say as matter of law that the outbursts of dissent testified to by defendant constitute a clear and sufficient notice of a rescission of his stock agreement. If uttered,—and, as stated, their utterance is emphatically disputed by those to whom appellant claims he addressed them,—they carried neither statement of fact, nor gave expression to a conclusion. The effect of a notice depends upon its terms; and we cannot say, as matter of law, that these vague oral manifestations of dissatisfaction gave definite information that defendant withdrew his subscription. That, however, was a question of fact for the jury, who could determine the credibility of the witnesses and reconcile conflicting testimony. The trial judge was attentive to properly instruct the jury that "if this defendant clearly and

positively gave notice" that he withdrew his subscription, he could not be held liable, an instruction fully in accord with the principle of law ruling generally in litigation of this character. To be effective, a notice for the rescission or termination of a contract must be clear and unambiguous, conveying an unquestionable purpose to insist on the cancellation. And where the conduct of one having the right to rescind a contract is ambiguous, and it is not clear whether he has rescinded it or not, he will be deemed not to have done so. Under this rule, a mere threat to cancel the contract is not sufficient as a notice of rescission: 3 Black on Rescission and Cancellation, section 574.

The learned court below based its refusal to grant a new trial or enter judgment n. o. v. on the failure of defendant to prove a proper notice of rescission, as the jury also found. The evidence clearly sustains this conclusion; there was no error which justifies a reversal and the assignments of error are overruled.

The judgment of the court below is affirmed.