## Sharon Industrial Development Association v. Mason

*Cyril T. Garvey*, for plaintiff.

*Nathan Routman*, for defendant.

ROWLEY, P. J., November 29, 1950.—This matter is before the court upon preliminary objections to a complaint in assumpsit. Plaintiff bases its claim upon the following writing:

"Mr. or Mrs. Nick Mason                                    0356
~~Sharon Oyster House~~
~~134 West State St.~~

——————————————————— Date July 1, 1947

"The undersigned hereby subscribes the sum of $1,000.00 One Thousand ................Dollars

to the Sharon Development Association toward the erection of a Community Hotel; payable 50% in 12 months; 25% in 24 months; 25% in 36 months, or as follows:

Signature      (s) Nick Mason

"Temporary Certificates of interest for each $100.00 of cash paid, shall be issued, and permanent certificates shall be issued by the Hotel Corporation when organized.

(REVERSE SIDE)

"July 28, 1947

"For value received we hereby transfer, set over and assign to the Sharon Industrial Development Association this subscription and all rights incident thereto.

"SHARON DEVELOPMENT ASSOCIATION
By   Hugh J. Garvey."

"Attest:
/s/  O. L. Long"

Defendant's brief summarizes his objections to the complaint thus:

"1. The Sharon Industrial Development Association has no legal basis for instituting the instant suit.

"2. The complaint does not set forth a valid cause of action sustainable at law.

"3. The complaint filed by plaintiff is inadequate in that it omits substantial averments of fact necessary for defendant to file a proper answer."

In support of the first objection, defendant urges that the subscription paper contains no undertaking by the development association to "undertake the promotion or erection of a community hotel". Defendant expresses the view that the subscription was merely "an offer to purchase stock in a proposed hotel corporation when formed". Defendant argues that if a contract was created by the subscription, it was a contract between the subscriber and the proposed hotel corporation.

In Berwick Hotel Company v. Vaughn, 300 Pa. 389, cited by defendant, it was declared,

" 'The important period in the transaction is, when the association is ready to file their articles in the office of the Secretary of the Commonwealth. Until that time the whole scheme is inchoate, and the subscriber may withdraw.' "

The report of the Berwick case does not set out the form of subscription; nevertheless, it does appear that the subscription was payable to a corporation to be formed and that the hotel was to be erected by the proposed corporation.

The rule contended for by defendant is explained by his citation from 13 Am. Jur. 334, §227, Corporations, viz.:

". . . before the formation of the corporation, the contemplated party to the contract, the promisee, is not in existence and hence cannot accept the offer of the subscriber, there can be no meeting of the minds

of the parties, so that until the corporation comes into existence, the obligation of the subscriber and the entire enterprise are inchoate and contingent."

Defendant cites Edinboro Academy v. Robinson, 37 Pa. 210, as support for his claim that only the proposed corporation may maintain suit to enforce collection of the subscription. However, it will be noted that the subscription in that case was made to certain individuals as trustees for the purpose of erecting a building to be used as an academy. The terms of the subscription bound the trustees, after the required amount had been subscribed, to call a meeting for organization of the subscribers and the choosing of the necessary and usual officers to carry into effect the design of the subscribers. Such a meeting was held and the group was thereafter chartered as a corporation of the first class. Subsequently, the original trustees of the fund sued to collect the amount subscribed by defendant. The trial court held that the corporation itself was the real plaintiff and that since there was no privity of contract between the corporation and defendant the suit could not be sustained. The Supreme Court said:

"So soon as this subscription paper became complete by the subscription of the stipulated amount of money, the subscribers to it became an association of persons united for contributing to a common fund for a common purpose, to be carried out by themselves. Then the subscription of each (at least if not withdrawn before the actual organization of the associates) became a contract by each associate with his fellows, in consideration of similar contracts by them, to contribute to the common fund the amount subscribed by him. Such an act of association involves an agreement to organize the associates when the subscription shall be complete. . . . The duties created by the act of subscription are duties to the association, and the

first of them that is to be performed is the duty of organization; and when this is complete, the duty of paying the sum subscribed is a duty to the organized association."

(In the instant case, an organization had been formed prior to defendant's subscription.)

In the Edinboro case defendant had complained that incorporation was not contemplated in the plan submitted to prospective subscribers. The court continued, saying that incorporation, "when regularly obtained by the common consent of the associates, must be regarded as the true organization of the association, and the corporation becomes the proper legal body to which the subscriptions are to be paid, and which is to sue for them."

The Supreme Court granted a new trial, suggesting that the corporation be substituted for the trustees as plaintiff. The subscription agreement expressly stipulated for an organization to supersede the trustees when the fund had been subscribed. The Supreme Court merely held that an organization had been formed and that the organization had superseded the trustees in accordance with the subscription contract, and thereby became the party to enforce payment of the subscription.

We are in agreement with the following, which instant defendant quotes from 18 C. J. S. §380, Corporations:

"The corporation alone is the proper party to sue if it, rather than the person named, is the party actually intended as the promisee."

Defendant's view is that the plan contemplated that the development association should organize a hotel corporation, "which latter organization would in turn issue stock and with the proceeds therefrom erect a community hotel."

2. Defendant's second objection is that the subscription includes no details as to the amount of capital stock to be issued, the number of shares, the par value, the name of the corporation or its location. We quote from defendant's brief:

"Concisely stated, we assert that neither the pleadings nor the subscription contract disclose the basis upon which the subscription was made with such certainty as to be enforcible as a valid and binding agreement."

3. Defendant's third objection is similar to its second objection except that it also seeks a rule for a more specific complaint if the court should reject the preliminary objections.

In considering questions presented by preliminary objections, the court should severely limit its discussion to the precise points which must be decided, lest a general discussion seem to prejudice the merits.

It must be realized that the facts to be considered by the court upon preliminary objections are those averred in the complaint notwithstanding that the subsequent trial may establish quite a different state of facts.

While some amplification of the averments of the complaint would have been helpful, we believe the existing complaint warrants these assumptions:

Some individuals desiring the construction of a hotel as a community project, associated themselves under the name, Sharon Development Association. This unincorporated association canvassed the community and obtained subscriptions aggregating a large amount. In the course of the campaign, the group obtained a charter as a first class corporation under the name, Sharon Industrial Development Association, to which all previous subscriptions were assigned. The corporation continued the solicitation of subscriptions

under the plan and in the form theretofore adopted by the unincorporated association. Subscriptions aggregating more than $700,000 were obtained, of which something more than $600,000 has been paid. Instant plaintiff undertook the erection of the hotel and has expended large sums in the erection of the hotel building, and now requires payment of such subscriptions as are unpaid in order to procure furnishings for the hotel and to complete landscaping of the premises.

A subscription contract is a legal obligation to make a payment in money or its equivalent in furtherance of an undertaking. The offer from which the obligation proceeds generally assumes the form of an express written promise to pay money for a stated purpose and becomes binding when accepted and founded upon a consideration.

It is not necessary that the payee should be named in the subscription paper; it is sufficient if there is an acceptance by the party intended; and this is so even if the payee was not in existence at the time the subscription was made.

It is essential that there should be an acceptance of the offered subscription, although the acceptance need not be express; it may be implied, as where liability or expense is incurred in the faith of the offer.

We must now examine the instant subscription in the light of the foregoing principles. If, as defendant contends, the undertaking of the promoters was to form a corporation which should erect a hotel, payment of the subscription could not be required until the articles of incorporation were duly filed. Until that time the subscriber might withdraw his subscription: Garrett v. Dillsburg and Mechanicsburg Railroad Co., 78 Pa. 465; Berwick Hotel Co. v. Vaughn, 300 Pa. 389. Furthermore, the corporation would be the proper party to sue for the subscription. However, the undertaking

disclosed by the instant complaint is of a distinctly different character. Plaintiff states a case bearing many aspects of a quasi-public enterprise. Subscriptions to such enterprises are favored in law because they are ordinarily calculated to foster and encourage quasi-public undertakings for advancement of community welfare. The subscription "to the Sharon Development Association toward the erection of a Community Hotel" clearly expresses the intent and purpose of the subscriber. The form employed was sufficient to authorize the development association to take the necessary and customary steps to provide for the construction. We have a situation that differs from those cases where a number of individuals sign mutual promises without naming a payee. Here there is an agreement to pay to a designated and existing payee for a specific purpose. We assume, as we may at the moment, that the group which incorporated as Sharon Industrial Development Association comprehended those who constituted Sharon Development Association. If construction of a hotel was undertaken by substantially the same group that obtained defendant's subscription, it is of no consequence, with respect to defendant's liability, that the group acted as a corporation, and not as an unincorporated association, in carrying out the declared purpose. In our opinion, it is of no moment that the corporate name is not identical with the name of the unincorporated association.

Incidental to its implied undertaking to construct a community hotel, the association agreed to issue certificates of interest to the subscriber upon payment of his subscription. This implied a promise to form a hotel corporation whose shares would be exchangeable for certificates of interest issued by the association.

We find nothing in the subscription contract which either expressly or impliedly compels the conclusion

that the hotel was to be constructed by the hotel corporation or that formation of such a corporation was to precede construction. Nothing in the subscription is inconsistent with plaintiff's claim that the association was to build the hotel and that the purpose of the proposed hotel corporation was to hold title upon completion of construction. Indeed, the terms of the subscription provided an interim between payment of the subscription and delivery of the shares of the hotel corporation. This circumstance seems to refute the claim that subscriptions were payable only to the corporation or that payment was to be deferred until a corporation had been formed.

Defendant suggests that if the preliminary objections be dismissed, the court should enter a rule upon plaintiff for a more specific complaint. To this, plaintiff replies that inasmuch as defendant failed to include this aspect in his preliminary objections, he cannot now have that question considered for the reason that the Pa. Rules of Civil Procedure require that all preliminary objections be raised at one time. Perhaps a strict application of the rule would require us to accept plaintiff's contention as to this point. Under prior procedure, courts were liberally disposed toward amendments of a challenged statement of claim: Davis v. Investment Land Co., 296 Pa. 449. If it appeared that plaintiff had the elements of a good statement but had stated them badly, he was permitted to amend. Notwithstanding the Rules of Civil Procedure, there is no indication of an intention to return to those earlier days when the determination of a cause was too largely dependent upon the skill of the pleader.

If the court, rejecting an attack upon the sufficiency of the complaint, is of the opinion that defendant requires additional information in order to present his defense, the court ought not to hesitate to order that it be supplied.

Defendant urges that plaintiff should be directed to set out details with respect to the proposed hotel corporation, viz., amount of capital stock, number of shares, whether common or preferred, name of the hotel, etc. What representations may have been made to defendant are unknown to us except as they are set out in the instant complaint. Assuming that the subscription contains the full agreement touching these points, the subscriber granted broad authority to the development association. If he had chosen to do so, defendant might have specified the quantity of the shares and incidental matters, as conditions limiting his subscription. His failure to so specify is some indication that he regarded the enterprise quasi-public and that his chief concern was erection of the hotel as a community project.

The subscription contract seems to promise defendant such proportion of the capital stock of the proposed hotel corporation as the amount of his subscription bears to the total fund subscribed. In the absence of evidence other than the subscription, it can be assumed that incorporation of the hotel was to be effected in the usual manner. The shares to be issued to defendant are sufficiently described to render the engagement enforcible against both the development association and the subscriber.

If the development association made representations inconsistent with the averments and inferences fairly warranted by the subscription agreement, they are matters of defense to be incorporated in defendant's answer.

Defendant's brief impliedly questions the validity of the assignment of defendant's subscription to the Sharon Industrial Development Association. Plaintiff's brief undertakes to explain the reason for the assignment. This explanation we may not consider,

nevertheless we regard it as sufficient at this point that plaintiff avers a valid assignment. Of course, defendant may by appropriate denial require plaintiff to prove a valid assignment.

Viewing the matter, as we must, from the averments of the complaint, we seem to have a rather simple contract. Defendant promised to subscribe to a fund for the construction of a hotel. The industrial association accepted the subscription and constructed the hotel. Defendant has received the consideration for which he contracted. Upon payment of his subscription, defendant is entitled to demand a certificate exchangeable for a calculable number of shares in the proposed hotel corporation.

If there are circumstances which relieve defendant of liability upon his subscription, these must be set forth in his answer to the instant complaint.

### Order

And now, November 29, 1950, this matter came on for argument upon preliminary objections to the complaint, and same were argued, whereupon, after due consideration, it is ordered, adjudged and decreed that the preliminary objections be overruled, and it is further ordered that defendant plead over within 20 days.