**PATERSON PARCHMENT PAPER CO. v.
INTERNATIONAL BROTHERHOOD
OF PAPER MAKERS et al.**

No. 10425.

United States Court of Appeals
Third Circuit.

Argued June 22, 1951.

Decided Aug. 1, 1951.

Rehearing Denied Sept. 18, 1951.

---

See also 83 F.Supp. 928.

George E. Beechwood, Philadelphia, Pa. (Conlen, LaBrum & Beechwood, Philadelphia, Pa., on the brief), for appellant.

Louis H. Wilderman, Philadelphia, Pa. (Richard H. Markowitz, Philadelphia, Pa., on the brief), for appellees.

Before BIGGS, Chief Judge, and STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The Paterson Parchment Paper Company has appealed from a judgment dismissing its action brought under Section 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185, against the International Brotherhood of Paper Makers and its Bristol Local #500 for damages arising out of an alleged breach of a collective labor agreement. The alleged breach was a strike, called on August 20, 1948, which shut plaintiff's plant down until November 20, 1948, with resultant serious loss to plaintiff. The contract was a comprehensive and detailed agreement covering the field of employment and labor relations at plaintiff's plant. It contained an express covenant not to strike. It was executed and to be performed in Pennsylvania and we construe it in accordance with Pennsylvania law.

The principal issue now before us is whether the contract was still in effect on the date of the strike's commencement. The defendants claim that it had terminated by virtue of a notice sent by them on June 1.

The controlling provisions of the contract read as follows:

"Section 15.  Term of Agreement

"This agreement shall be in effect from August 15, 1947 to August 15, 1948 and thereafter from year to year, provided, however, that either party may terminate the same on not less than sixty (60) days written notice given to the other prior to the anniversary date.

"However, should there be a delay in negotiating the new agreement, this agreement shall remain in full effect until such time as a new agreement is completed."

The defendants contend that the following written notice given by the Regional Director of the parent union on June 1, 1948 was sufficient under this contract to terminate it on August 15, 1948:

"This letter is to serve as notification in compliance to the sixty (60) days notice stipulation, in our contract, that Bristol Local #500 desires a meeting with the Company for the purpose of discussing changes in the contract for the coming year.

"Will you kindly let me know as soon as possible the date and place most convenient for you to meet with the Union Committee and a Representative of the

Union so that this contract can be concluded by the expiration date".

To this letter the company respondent on June 7, 1948:

"We have your letter of June 1, addressed to Mr. King Evans requesting a meeting with the Company for the purpose of discussing changes in the contract for the coming year. .

"The Company will be very glad to meet with you at 10:30 A.M. on June 15, this being the earliest possible date that we can all get together, and I hope that will meet with your approval. If not, please suggest to us another date not earlier than the 15th."

■ The union's letter states that it is tendered as "notification in compliance to the sixty (60) days notice stipulation." This clearly means notice of termination under Section 15 of the contract. Plaintiff has attempted to make this meaning doubtful. But in the circumstances we find nothing except Section 15 to which this language can sensibly refer.

Intended as notice of termination, the words used are adequate for the purpose. It is true the notice envisages a continuing labor-management relationship between the parties, but under a new contract to be negotiated in the two months available before expiration of the old contract. As concerns the old contract, the notice is a plain manifestation of unwillingness to continue under its provisions beyond its potential expiration date.[1]

It is also necessary to consider the meaning and effect of the language of the second paragraph of Section 15 of the contract that "should there be a delay in negotiating the new agreement, this agreement shall remain in full effect until such time as a new agreement is completed". The language follows immediately after the provision for 60 days notice of termina-tion on a contract anniversary. It is obviously directed at the avoidance of a no contract situation where pending negotiation of a new contract continues beyond the notified termination of the old. It is phrased only in terms of a successful negotiation. It leaves to inference the result of unsuccessful negotiation.

But the correct inference is not hard to draw. Negotiation is set up as a factor suspending or postponing the normal effect of notice of termination. The end of negotiation, whether success or failure, marks the end of this postponement.

It may not always be easy to say when negotiations for a new contract have failed and ended. But no such difficulty exists here. Before the strike was called both parties had recognized that further discussions would be futile. They had broken off their long continued meetings with the understanding that they would not meet again. In recognition of the impasse and its likely consequences, they had discussed and arranged for maintenance essential to plant security in the event of a strike. It is a fact clear on this record that negotiations toward a new contract had failed and come to an end.

■ In summary, the contract here required 60 days notice of termination, and appropriate notice was given. But, also in accordance with the contract, termination was suspended by negotiations toward a new contract. These failed and ended. The old contract thereupon terminated pursuant to the permitted election already made manifest by timely notice as provided in the document itself. The obligation not to strike, like the other obligations of the contract ceased to exist.[2] For this reason the complaint was properly dismissed. Other points urged need not be considered.

The judgment of the district court will be affirmed.

[1]. The meaning is too clear to call for the application of doctrine found useful in construction of language that is obscure or ambiguous. E. g. Berwick Hotel v. Vaughn, 1930, 300 Pa. 389, 150 A. 613, 71 A.L.R. 1340; Holmes Electric Protective Co. v. Goldstein, 1942, 147 Pa.Super. 506, 24 A.2d 161, both relied upon by the plaintiff.

[2]. We have examined the several authorities cited and argued by plaintiff concerning obligations not to strike. They do not help us decide what Section 15 of this contract means. And that is the decisive inquiry here.