REINAUER TRANSP. COS., Inc. et al. v.
UNITED MARINE DIVISION, I.L.A.,
LOCAL 333, A. F. OF L.

United States District Court
S. D. New York.
April 14, 1953.

James A. Breslin, Lyndhurst, N. J., for plaintiffs.

Brenner, Hannon & Murphy, New York City, for defendant.

LEIBELL, District Judge.

Defendant moves under rule 12(b), Federal Rules Civil Procedure, 28 U.S.C.A., to dismiss the complaint in this action on two grounds: (1) that the complaint fails to state a claim upon which relief can be granted, and (2) that this Court lacks jurisdiction over the subject matter of the action.

The plaintiffs instituted this action on February 4, 1953 under Subchapter IV of the Labor Management Relations Act, 1947, Title 29 U.S.C.A. § 185. The complaint sets out ten counts in damages, one count for each plaintiff. Save for variations in the number of vessels owned by each plaintiff and the amount of damages alleged to have been sustained by each plaintiff, the counts are the same in form and content. Plaintiffs allege that they are the owners of vessels which ply their trade "in the waters of the Port of New York coastwise along the Atlantic Seaboard and on the navigable waters of the State of New Jersey in the transportation for hire of petroleum products in interstate commerce." The defendant Union is alleged to be the exclusive collective bargaining agent for all its members who work on self-propelled or non-propelled vessels on the aforementioned waters.

Paragraphs 4, 5, and 6 of the complaint allege:

"4. On or about February 1, 1952, the defendant Union as the sole and exclusive bargaining representative of its members who were employed by the Plaintiff as crew members of its vessel, entered into an agreement with said defendant Union concerning rates of pay, wages and other conditions of employment to be observed between said Plaintiff and employees, effective from the first of February, 1952 to January 31, 1953.

"5. Article 1; Section 4 of said agreement provided:

" 'The Union, in its own behalf and on behalf of the employees, agrees that during the life of this agreement, as well as during the pendency of any proceedings before the Adjustment Committee or Board of Arbitration, as provided for in Article II, or during any period of negotiations for a new agreement or for a modification or renewal of this agreement there shall be no strikes, "sit downs", sympathy strikes or stoppages, picketing or cessation of work by the Union or the employees; and, to that end, the Union and the employees agree not to stop, hinder or restrain, nor to instigate or encourage any other persons

to stop, hinder, or restrain the employe's vessels in any manner from carrying on the employer's business and the employees who do not abide by the provision of this section may be discharged by the employer. Upon the violation of this section by the Union or any of the employees, this agreement may be terminated with respect to and by the employer.'

"6. Article 5 of said agreement provided:

" 'This agreement is effective as of 12:01 A.M., February 1, 1952 and shall remain in force and effect to and including January 31, 1953, and shall be automatically renewed thereafter from year to year (or by agreement for a longer period), unless 60 days before the expiration date, designated herein, or at the expiration of any renewal period, written notice of termination is given by registered mail by either party to the other, addressed in the case of the Employer, to the United Marine Division, I. L. A., Local 333 at 107 Washington Street, New York 6, New York and in the case of the Union, to Reinauer Transportation Companies, Inc. at 1983 Richmond Terrace, Staten Island, New York 2, New York.' "

The complaint further alleges (par. 7) that on or about November 28, 1952 the Union advised plaintiff by letter that the contract would terminate as of midnight, January 31, 1953, and in the same letter the Union requested that "at the earliest opportunity an authorized representative of the Company contact the President and General Manager (William V. Bradley) of the Union in order to arrange suitable time and place for the commencement of the negotiations".

The complaint further alleges:

"8. Prior to January 23, 1953 the Plaintiff by its authorized representative contacted William V. Bradley, President and General Manager of the defendant Union, and at the request of the said William V. Bradley to provide a meeting place for the purpose of negotiating a new collective bargaining agreement, the Plaintiff reserved the Marine Room in the Hotel Plaza at Jersey City for Friday, January 23, 1953 at 2:30 P.M. and so advised the said William V. Bradley, President and General Manager of the defendant Union.

"9. At about 10:45 A.M. on Friday, January 23rd, 1953, the defendant Union advised the Plaintiff that its representative could not attend the meeting previously agreed upon for the afternoon of January 23, 1953 and cancelled said meeting.

"10. Subsequent to January 23, 1953, defendant Union, through William V. Bradley, President and General Manager, advised the Plaintiff that the defendant Union would contact Plaintiff to agree upon a time and place to negotiate a new collective bargaining agreement. The defendant Union failed and neglected to contact the Plaintiff for the purpose of agreeing upon the time and place to negotiate such agreement but, on the contrary, did, at midnight, January 31, 1953, without notice to the Plaintiff, and during the period of negotiations for a new agreement, call a strike against the Plaintiff in violation of Article I, Section 4 of the hereinbefore mentioned collective bargaining agreement."

Defendant argues that the complaint must be dismissed for failure to state a claim because it does not set forth the consideration for the contract and because it fails to disclose any violation of the terms of the contract.

■ The contract was for the hiring of members of defendant Union by the plaintiffs. As paragraph 4 of the complaint alleges, the agreement was concerned with "rates of pay, wages and other conditions of employment". Its provisions extended to those members of the Union who were employed by the plaintiffs. When a Union member was hired by one of the plaintiffs, the terms of the collective bargaining agreement were automatically impressed on the employer-employee relationship, including the prohibition

against strikes contained in Article I, section 4 of the agreement. The defendant was the exclusive bargaining representative for the Union men employed by the plaintiffs. The employment of the members of defendant Union by the plaintiffs under the terms of the agreement, represented sufficient consideration for defendant's obligations under the contract.

In his brief submitted in support of the motion, counsel for defendant contends that there was no violation of the contract by the Union in calling the strike on January 31, 1953, because the negotiations looking toward the execution of a new contract had not commenced.

The plaintiffs have summarized in the complaint the conduct of defendant's president and their own conduct in respect to the negotiations. Apparently the Union requested that a time and place for the commencement of the negotiations be arranged but never actually attended any meeting with the plaintiff and never discussed any terms for the new agreement. But the Union never gave any notice that it would not negotiate for a new contract after it requested the plaintiff to arrange a suitable time and place for the commencement of negotiations.

Article I, section 4 of the agreement between the parties provided that there should be no strike "during any period of negotiations for a new agreement". The Union had given notice of the termination of the old agreement, at the time it requested that the preliminaries be arranged for the commencement of the negotiations. The question presented is whether or not, on the facts alleged in the complaint, there was "any period of negotiations for a new agreement" and if so when the period started and when it ended. Did the period of negotiations begin when the defendant Union served its request that the respective representatives arrange a suitable time and place for the commencement of the negotiations? I believe it did.

Taking the allegations of the complaint at their face value, it appears that the period of negotiations for the new agreement began with that request, or at any rate when the plaintiff complied with the request and arranged the time and place for the first meeting and so advised the Union. Although the Union cancelled the first meeting, arranged for January 23, 1953, a few hours before it was to be held, the President of the Union later advised the plaintiff that he would contact the plaintiff to agree upon a time and place to negotiate a new agreement. Thus the period of negotiations was kept open. When the strike was called on January 31, 1953, the period of negotiations had not been formally terminated. Paterson Parchment P. Co. v. International Brotherhood, 3 Cir., 191 F.2d 252; International Union of Op. Eng. v. Dahlem Const. Co., 6 Cir., 193 F.2d 470.

On a motion such as this the complaint is to be construed in a light most favorable to the plaintiffs. At the trial, the court will have before it all that was said in the telephone conversations between the plaintiffs' and the Union's representatives. This is an action for the violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce, as commerce is defined in section 152(6). The complaint pleads a claim upon which relief can be granted under the statute, 29 U.S.C.A. § 185.

Defendant's attorney argues that the Union's conduct may be an unfair labor practice under T. 29 U.S.C.A. § 158(b) (2), which so characterizes a Union's refusal to bargain collectively with an employer where the Union is the representative of the employees, and that the National Labor Relations Board would have jurisdiction over any such offense. Congress has entrusted the correction and prevention of the unfair labor practices listed in section 158 to the exclusive jurisdiction of the National Labor Relations Board. 29 U.S.C.A. § 160. N. L. R. B. v. International Union, 7 Cir., 194 F.2d 698 at page 702. But in the instant action there was no formal refusal to negotiate a collective bargaining agreement. The conduct of the Union indicated an intention to negotiate. There was a strike during the period of negotiations. That was a violation of the

944

collective bargaining agreement, for which section 185 specifically gave the employer a right of action and conferred on the United States District court jurisdiction over the subject matter of the action.

Defendant's motion is in all respects denied.